1
2
3
4
5
6
7
8
9
10

**IN THE UNITED STATES DISTRICT COURT**

11

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

12

13 | CYNTHIA ALFORD,                               CASE NO. CV F 10-0091 LJO SMS

14 |                  Plaintiff,                   **ORDER ON DEFENDANT'S F.R.Civ.P. 12**
                                                   **MOTION TO DISMISS**
15 |      vs.                                      (Doc. 6.)

16 | WACHOVIA BANK/WORLD SAVINGS
    | BANK,
17
18 |                  Defendant.
    | _____/

19

## INTRODUCTION

20         Defendant Wachovia Mortgage, FSB ("Watchovia") seeks to dismiss as meritless and time

21 barred pro se plaintiff Cynthia Alford's ("Ms. Alford's") claims arising out of her home loan and

22 foreclosure of her Modesto residential property ("property").  This Court considered Wachovia's

23 F.R.Civ.P. 12 (b)(6) motion to dismiss on the record and VACATES the March 2, 2010 hearing,

24 pursuant to Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES this action.

25                                    ## BACKGROUND

26                              ### Ms. Alford's Loan And Default

27         On December 7, 2005, Ms. Alford obtained a $264,000 adjustable rate loan from World Savings

28 Bank, renamed and now know as Wachovia, a federal savings bank.  The loan was secured by a deed

of trust on the property and which was recorded on December 14, 2005.[1]

Ms. Alford defaulted on her loan, and Wachovia recorded a notice of default on June 16, 2009. A declaration to certify California Civil Code section 2923.5 compliance is attached to the notice of default.

By a substitution of trustee recorded on July 30, 2009, NDEx West, LLC ("NDEx") substituted as trustee under the deed of trust.

On September 21, 2009, Wachovia recorded a notice of trustee's sale as to the property. A November 20, 2009 public foreclosure sale was conducted. On November 30, 2009, a trustee's deed in Wachovia's favor was recorded.

**Ms. Alford's Claims**

On December 3, 2009, Ms. Alford filed her complaint ("complaint"), and Wachovia recently removed Ms. Alford's action to this Court. The complaint names Wachovia as the sole defendant and alleges that "defendants":

1.   "[E]ngaged in an illegal scheme . . . to provide loans secured by the property . . . to make an undisclosed profit by the sale of a [sic] instrument that was created out of the transaction";

2.   "[E]ntered into a fraudulent scheme, the purpose of which was to make, accept, transfer, assign or purchase of a loan made by World Savings Bank/Wachovia to plaintiff, which defendant and each of them, were keenly aware that plaintiff could not afford, at a cost way above the then prevailing market rate, and falsely represented to plaintiff that she could not qualify for any other financing under any reasonable underwriting guidelines";

3.   Failed to "provide the required disclosures" under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., and its implementing Regulation Z ("Reg. Z"), 12 C.F.R. §§ 226, et seq.;

4.   "[P]roceeded with the invalid Foreclosure sale" in that "none of these alleged beneficiaries or representatives of the Beneficiary have the original note"; and

---

[1]     Documents pertaining to Ms. Alford's loan, default and property foreclosure were recorded with the Stanislaus County Recorder.

2

5.      "[F]oreclosed on Plaintiff' [sic] Trust Deed, in concert with their scheme to defraud Plaintiff out of her Property"

The complaint alleges that Ms. Alford "could not afford the loan" in that it exceeded her retirement income and that "Wachovia was contractually bound to accept a loan modification." The complaint seeks to recover $1 million and for Ms. Alford's emotional distress. The complaint further seeks "to reinstate Plaintiff on title on her Property" and a "restraining order" to prevent sale or transfer of the property.

The complaint alleges what Wachovia characterizes as two "untitled" and "vague and confusing causes of action," the allegations of which will be discussed below, and which purport to seek recovery under California statutes, TILA, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq., and the Racketeer and Corrupt Practices Act ("RICO"), 18 U.S.C. §§ 1961, et seq.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Wachovia seeks to dismiss this action in absence of a "viable" claim against it. For the reasons discussed below, this Court concludes that this action is subject to sua sponte dismissal.

"A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal may be made without notice where the claimant cannot possibly win relief." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981). Sua sponte dismissal may be made before process is served on defendants. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*, 745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte prior to service of process on defendants).

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where

1   there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

2   cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling*

3   *v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

4          In resolving a F.R.Civ.P. 12(b)(6) motion, a court must:  (1) construe the complaint in the light

5   most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine

6   whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty*

7   *Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).   Nonetheless, a court is not required "to accept as

8   true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

9   *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court

10  need not permit an attempt to amend if "it is clear that the complaint could not be saved by an

11  amendment."   *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

12  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

13  allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

14  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

15  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

16  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

17  plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

18  *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either

19  direct or inferential allegations respecting all the material elements necessary to sustain recovery under

20  some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

21  *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

22          In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently

23  explained:

24          To survive a motion to dismiss, a complaint must contain sufficient factual
        matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A

25      claim has facial plausibility when the plaintiff pleads factual content that allows the court
        to draw the reasonable inference that the defendant is liable for the misconduct alleged.

26      . . . The plausibility standard is not akin to a "probability requirement," but ask it asks
        for more than a sheer possibility that a defendant has acted unlawfully.  (Citations

27      omitted.)

28  The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft*, __ U.S. __, 129 S.Ct. at 1949-1950.

Moreover, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982). A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682. If the limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Van Winkle*, 290 F.Supp.2d at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their

claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[2]   A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).   Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).   A court properly may take judicial notice of matters of public record outside the pleadings'" and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted).

As such, this Court is able to consider plaintiffs' pertinent loan and foreclosure documents.

### Failure To Satisfy F.R.Civ.P. 8

The complaint sprawls 17 pages of verbose and at times, unintelligible, text and includes impertinent case citations and related discussion.  Wachovia attacks the complaint globally for failure to satisfy F.R.Civ.P. 8 in that the complaint has "few factual allegations with respect to Wachovia and relies almost exclusively on improper labels and legal conclusions."

F.R.Civ.P. 8 requires a plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct."  This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).  "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180.  "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179.

---

[2]        "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

Moreover, a pleading may not simply allege a wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47-48, 78 S.Ct. 99, 103 (1957); *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones*, 733 F.2d at 649. A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft*, __ U.S. __, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

The complaint fails to satisfy F.R.Civ.P. 8 requirements. The complaint makes vague, unsupported allegations of a "fraudulent scheme," "invalid Foreclosure sale," "scheme to defraud Plaintiff out of her property," Wachovia's obligation "to accept a loan modification," and absence of "full disclosure." The complaint lacks relevant facts to support valid, cognizable legal theories as to Wachovia. The complaint appears to lump Wachovia with other unnamed "defendants" without distinguishing their alleged wrongs among "defendants." The complaint fails to give Wachovia fair notice of claims plainly and succinctly to warrant dismissal of Ms. Alford's claims.

## TILA Damages And Recision Limitations Periods

The complaint alleges TILA violations arising from failure to make disclosures. Wachovia faults a TILA damages claim as time barred.

A TILA damages claim is subject to 15 U.S.C. § 1640(e), which provides that an action for a TILA violation must proceed "within one year from the date of the occurrence of the violation." "TILA requires that any claim based on an alleged failure to make material disclosures be brought within one year from the date of the occurrence of the violation." *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d 1176, 1183 (D. Or. 2005), *aff'd*, 280 Fed.Appx. 667 (9th Cir. 2008). The limitations period runs from the date of a transaction's consummation which is the time that a consumer becomes contractually obligated on a credit transaction. *Monaco v. Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008). The Ninth Circuit Court of Appeals noted in *Meyer v. Ameriquest*

7

*Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

> The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed. The [plaintiffs] were in full possession of all information relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day the loan papers were signed.

Ms. Alford consummated her loan in December 2005 and delayed four years to file her complaint on December 3, 2009 to render a TILA damages claim time barred.

Wachovia further argues that a TILA rescission claim is barred by the three-year limitations period.

TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without penalty, a consumer loan that uses their principal dwelling as security. *Semar v. Platte Valley Federal Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986);15 U.S.C. § 1635(a). TILA rescission may be extended up to three years if the lender fails to comply with TILA disclosure requirements. *Semar*, 791 F.2d at 701-702; 15 U.S.C. § 1635(f).

15 U.S.C. § 1635(f) addresses the outer most limit to seek rescission:

> An obligor's right of rescission **shall expire three years after the date of consummation of the transaction** or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . (Bold added.)

The United States Supreme Court has described as "manifest" Congress' intent to prohibit rescission after the three-year period has run:

> Section 1635(f), however, takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well. The subsection says nothing in terms of bringing an action but instead provides that the "right of rescission [under the Act] shall expire" at the end of the time period. It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous. There is no reason, then, even to resort to the canons of construction that we use to resolve doubtful cases, such as the rule that the creation of a right in the same statute that provides a limitation is some evidence that the right was meant to be limited, not just the remedy. *See Midstate Horticultural Co., supra*, at 360, 64 S.Ct., at 130; *Burnett, supra*, at 427, n. 2, 85 S.Ct., at 1054 n. 2; *Davis v. Mills*, 194 U.S. 451, 454, 24 S.Ct. 692, 693-694, 48 L.Ed. 1067 (1904).

*Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 419, 118 S.Ct. 1408 (1998); *see Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) ("§ 1635(f) is a statute of repose, depriving the

1  courts of subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation

2  period").

3  　　　Given Ms. Alford's December 2005 loan transaction, the TILA rescission limitations period

4  expired no less that a year prior to the filing of her complaint to bar a TILA rescission claim.

5  　　　Wachovia further correctly notes the absence of equitable tolling in that the limitations periods

6  run from "actual discovery" of loan terms, which were known to Ms. Alford at the December 7, 2005

7  signing of her loan documents. *See Katz v. Bank of California*, 640 F.2d 1024, 1025 (9th Cir. 1981).  The

8  complaint alleges no facts to support tolling of a TILA claim filed nearly four years after the loan

9  consummation.

10  **Inadequate Tender**

11  ***TILA***

12  　　　Wachovia faults the complaint's lack of allegations that Ms. Alford is willing or able to tender

13  loan proceeds to invoke TILA rescission.   The "voiding of a security interest may be judicially

14  conditioned on debtor's tender of amount due under the loan."  *American Mortgage Network, Inc. v.*

15  *Shelton*, 486 F.3d 815, 821 (4th Cir. 2007).

16  　　　15 U.S.C. § 1635(b) governs the return of money or property when a borrower has rescinded

17  effectively:

18  　　　. . . Within 20 days after receipt of a notice of rescission, the creditor shall return to the
　　　obligor any money or property given as earnest money, downpayment, or otherwise, and
19  　　　shall take any action necessary or appropriate to reflect the termination of any security
　　　interest created under the transaction. If the creditor has delivered any property to the
20  　　　obligor, the obligor may retain possession of it. Upon the performance of the creditor's
　　　obligations under this section, the obligor shall tender the property to the creditor, except
21  　　　that if return of the property in kind would be impracticable or inequitable, the obligor
　　　shall tender its reasonable value. Tender shall be made at the location of the property or
22  　　　at the residence of the obligor, at the option of the obligor. If the creditor does not take
　　　possession of the property within 20 days after tender by the obligor, ownership of the
23  　　　property vests in the obligor without obligation on his part to pay for it. The procedures
　　　prescribed by this subsection shall apply except when otherwise ordered by a court.

24

25  　　　12 C.F.R. § 226.23(d) addresses rescission effects and provides:

26  　　　　　(2) Within 20 calendar days after receipt of a notice of rescission, the creditor
　　　shall return any money or property that has been given to anyone in connection with the
27  　　　transaction and shall take any action necessary to reflect the termination of the security
　　　interest.

28

1

2

3

4

5

   (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, **the consumer shall tender the money or property to the creditor** or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.  (Bold added.)

6  Neither TILA nor its implementing Reg. Z "'establishes that a borrower's mere assertion of the

7 right of rescission has the automatic effect of voiding the contract.'"  *Yamamoto v. Bank of New York*,

8 329 F.3d 1167, 1172 (9th Cir. 2003) (quoting *Large v. Conseco Financing Servicing Corp.*, 292 F.3d 49,

9 54-55 (1st Cir. 2002)).  The Ninth Circuit, relying on *Large*, explained:

10

11

12

   Instead, the "natural reading" of the language of § 1635(b) "is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that right of rescission is available, or because the appropriate decision maker has so determined. . . . Until such decision is made the [borrowers] have only advanced a claim seeking rescission."

13 *Yamamoto*, 329 F.3d at 1172 (quoting *Large*, 292 F.3d at 54-55)).

14  A rescission notice is not automatic "without regard to whether the law permits [borrower] to

15 rescind on the grounds asserted."  *See Yamamoto*, 329 F.3d at 1172.  Entertaining rescission

16 automatically "makes no sense . . . when the lender contests the ground upon which the borrower

17 rescinds."  *Yamamoto*, 329 F.3d at 1172.  "In these circumstances, it cannot be that the security interest

18 vanishes immediately upon the giving of notice.  Otherwise, a borrower could get out from under a

19 secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed

20 any."  *Yamamoto*, 329 F.3d at 1172 (italics in original).

21  Moreover, although 15 U.S.C. § 1635(b) "provides for immediate voiding of the security interest

22 and return of the money within twenty days of the notice of rescission, we believe this assumes that the

23 notice of rescission was proper in the first place."  *In re Groat*, 369 B.R. 413, 419 (Bankr. 8th Cir. 2007).

24 A "court may impose conditions on rescission that assure that the borrower meets her obligations once

25 the creditor has performed its obligations."  *Yamamoto*, 329 F.3d at 1173.  The Ninth Circuit has

26 explained that prior to ordering rescission based on a lender's alleged TILA violations, a court may

27 require borrowers to prove ability to repay loan proceeds:

28   As rescission under § 1635(b) is an on-going process consisting of a number of

10

steps, there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

*Yamamoto*, 329 F.3d at 1173 (affirming summary judgment for lender in absence of evidence that borrowers could refinance or sell property); *see American Mortgage*, 486 F.3d at 821 ("Once the trial judge in this case determined that the [plaintiffs] were unable to tender the loan proceeds, the remedy of unconditional rescission was inappropriate."); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir. 1974) (under the facts, loan rescission should be conditioned on the borrower's tender of advanced funds given the lender's non-egregious TILA violations and equities heavily favoring the lender).[3]

Wachovia correctly contests Ms. Alford's TILA rescission attempt.  The complaint does not address conditions precedent to permit rescission.  The complaint is not a timely, valid rescission notice, and allegations of ability to "execute" a loan modification are far from sufficient.  The complaint's silence on Ms. Alford's tender of loan proceeds is construed as their concession of inability to do so.  "Clearly it was not the intent of Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest." *American Mortgage*, 486 F.3d at 820-821.  Without Ms. Alford's meaningful tender, TILA rescission is an empty remedy, not capable of being granted.  The absence of a sufficiently alleged notice of rescission and tender of loan proceeds dooms a TILA rescission claim to warrant further dismissal of this action.

---

[3]   The Fourth Circuit Court of Appeals agrees with the Ninth Circuit that 15 U.S.C. § 1635(b) does not compel a creditor to remove a mortgage lien in the absence of the debtor's tender of loan proceeds:

> Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers.

*Powers v. Sims & Levin*, 542 F.2d 1216, 1221 (4th Cir. 1976).

*Other Rescission Grounds*

Wachovia further points out that lack of tender allegations bars an attempt to rescind under other claims or theories. Wachovia explains that Ms. Alford "has not fulfilled her end of the bargain – she has defaulted and has not offered to pay the loan."

"A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ. Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414 (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15.

A defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S. 1081, 117 S.Ct. 746 (1997). In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

> . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs. (Citations omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes. *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing Cal. Civ. Code, § 1495.) Simply put, if the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing several cases). "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." *United States Cold Storage v. Great Western*

12

*Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985).  "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender."  *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured."  *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").  "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness."  *Sipe v. McKenna,* 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant."  *Fleming v. Kagan*, 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (1961).  "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust."  *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851.  Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial foreclosure sales."  *Residential Capital v. Cal-Western Reconveyance Corp.*, 108 Cal.App.4th 807, 820, 821, 134 Cal.Rptr.2d 162 (2003).

"The rules which govern tenders are strict and are strictly applied."  *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003).  "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction."  *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154, 1165, 246 Cal.Rptr. 421 (1988).   The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect."  *Gaffney,* 200

1    Cal.App.3d at 1165, 246 Cal.Rptr. 421.

2        The complaint references willingness to execute a loan modification.  The issue is not modifying

3    Ms. Alford's loan but tendering her indebtedness to render insufficient an offer to modify the loan.  The

4    authorities cited above require a tender of the "indebtedness," not loan modification.  Ms. Alford must

5    rely on more than tender of loan modification to avoid the results of inability to tender her indebtedness.

6    Ms. Alford's challenges to foreclosure are meaningless in the absence of a valid tender.   The record

7    reveals Ms. Alford's inability to tender her indebtedness given that the complaint acknowledges Ms.

8    Alford's failure to make her obligated monthly payments.  With the complaint's absence of a meaningful

9    ability or willingness to tender Ms. Alford's indebtedness, a rescission claim, whether based under TILA

10   or another avenue, is barred.

11                              **California Civil Code Section 2923.6**

12       Wachovia construes the complaint to attempt to allege a claim for violation of California Civil

13   Code section 2923.6 ("section 2923.6").  Wachovia faults the absence of a private right of action under

14   section 2923.6.

15       Section 2923.6(b) notes the Legislature's intent that a mortgagee "offer the borrower a loan

16   modification or workout plan if such modification or plan is consistent with its contractual or other

17   authority."  "[N]othing in Cal. Civ.Code § 2923.6 imposes a duty on servicers of loans to modify the

18   terms of loans or creates a private right of action for borrowers." *Farner v. Countrywide Home Loans*,

19   2009 WL 189025, at *2 (2009).  In *Vikco Ins. Services, Inc. v. Ohio Indem. Co.,* 70 Cal.App.4th 55, 62-

20   63, 82 Cal.Rptr.2d 442 (1999), the California Court of Appeal explained the absence of a private right

21   of action arising from a statute silent on the issue:

22           Adoption of a regulatory statute does not automatically create a private right to
             sue for damages resulting from violations of the statute. Such a private right of action
23           exists only if the language of the statute or its legislative history clearly indicates the
             Legislature intended to create such a right to sue for damages. If the Legislature intends
24           to create a private cause of action, we generally assume it will do so " 'directly[,] ... in
             clear, understandable, unmistakable terms ....' [Citation.]" ( *Moradi-Shalal v. Fireman's
25           Fund Ins. Companies* (1988) 46 Cal.3d 287, 294-295 [250 Cal.Rptr. 116, 758 P.2d 58]
             (*Moradi-Shalal* ); see also *Crusader Ins. Co. v. Scottsdale Ins. Co.*, supra, 54
26           Cal.App.4th at pp. 125-137 [because a judge may not insert what has been omitted from
             a statute, legislative intent alone determines whether a statute creates a new private right
27           to sue]; *Schaefer v. Williams* (1993) 15 Cal.App.4th 1243, 1248 [19 Cal.Rptr.2d 212]
             [nothing in Elections Code creates a private cause of action to enforce a pledge to follow
28           fair campaign practices; "Surely, if the Legislature had intended to create such a private

                                              14

1
2
3

action, it would have done so by clear and direct language"]; *Nowlon v. Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437, 1444-1445 [2 Cal.Rptr.2d 683] [absent some express provision for civil liability, courts cannot assume a private cause of action for negligence may be brought any time a legislative enactment is violated].)

4
5
6
7
8

Neither a private right of action nor actionable duty is discernable from section 2923.6 to defeat a claim based on its violation. Section 2923.6 does not require a lender to enter into a loan modification to serve the parties' best interests. Moreover, Wachovia notes the absence of a loan to modify given the extinguishment of Ms. Alford's loan on the foreclosure sale of her property. Section 2923.6 is inapplicable.

9

### RESPA Claims

10
11

Wachovia faults a RESPA claim based on the complaint's passing reference to RESPA to support this Court's jurisdiction and the absence of allegations of Ms. Alford's damages.

12

### No Private Right Of Action For Disclosure Violations

13
14
15
16
17
18

RESPA's purpose is to "curb abusive settlement practices in the real estate industry. Such amorphous goals, however, do not translate into a legislative intent to create a private right of action." *Bloom v. Martin*, 865 F.Supp. 1377, 1385 (N.D. Cal. 1994), *aff'd*, 77 F.3d 318 (1996). "The structure of RESPA's various statutory provisions indicates that Congress did not intend to create a private right of action for disclosure violations under 12 U.S.C. § 2603 . . . Congress did not intend to provide a private remedy . . ." *Bloom*, 865 F.Supp. at 1384.

19
20

The absence of a private right of action for RESPA disclosure violations dooms a purported RESPA claim based on disclosure violations.

21

### Absence Of Pecuniary Loss

22
23
24
25
26

Under RESPA, a qualified written response ("QWR") is a "written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). Among other things, a QWR must include a "statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii).

27
28

A mere allegation of failure to respond to a QWR does support a RESPA claim. "Whoever fails to comply with this section shall be liable to the borrower . . . [for] any actual damages to the borrower

15

1    as a result of the failure . . ."  12 U.S.C. § 2605(f)(1)(A).  "However, alleging a breach of RESPA duties

2    alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach

3    resulted in actual damages."  *Hutchinson v. Delaware Sav. Bank FSB*, 410 F.Supp.2d 374, 383 (D. N.J.

4    2006).

5          A purported RESPA claim fails to allege pecuniary loss from Wachovia's failure to respond to

6    a QWR.  Such omission is fatal to a claim's mere reliance on a RESPA violation.  A purported RESPA

7    claim is doomed in the absence of allegations of Ms. Alford's identifiable damages attributable to a

8    RESPA violation.

9                                        ***Limitations Period***

10          Wachovia correctly invokes the three-year limitations period of 12 U.S.C. § 2614 to bar a

11   RESPA claim.

12          The "primary ill" which RESPA seeks to remedy is "the potential for 'unnecessarily high

13   settlement charges' caused by kickbacks, fee-splitting, and other practices that suppress price

14   competition for settlement services.  This ill occurs, if at all, when the plaintiff pays for the service,

15   typically at the closing."  *Snow v. First American Title Ins. Co.*, 332 F.3d 356, 359-360 (5th Cir. 2003)

16   (quoting 12 U.S.C. §2601(a)); *see Edwards v. First American Corp.*, 517 F.Supp.2d 1199, 1204 (C.D.

17   Cal. 2007)).  Ms. Alford closed her loan in December 2005, years prior to the December 3, 2009 filing

18   of her complaint.

19                  **California Civil Code Sections 1624, 2924 and 2932.5**

20          The complaint references California Civil Code sections 1624 ("section 1624"), 2924 ("section

21   2924"), and 2932.5 ("section 2932.5") in an apparent attempt to allege claims under the statutes.

22          The complaint alleges that the trustee "failed to have written authorization to act for the principal

23   and under Cal. Civ. Code Sec 1624."  Section 1624 is California's statute of frauds.  Wachovia points

24   to the substitution of trustee, recorded July 30, 2009, whereby NDEx West, LLC substituted as deed of

25   trust trustee to render it authorized to conduct foreclosure for Wachovia.  Wachovia is correct that

26   section 1624 creates no private cause of action for Ms. Alford.

27          The complaint further alleges that "the notices and foreclosure failed to conform with" section

28   2932.5 and California Commercial Code section 3302, et seq.  Wachovia is correct that the complaint

                                              16

lacks facts to support lack of conformity with the statutes and that the statutes provide no private cause of action.

The complaint also challenges failure to provide Ms. Alford "with an original copy of the alleged debt it must be in hard copy form." The complaint attempts to invoke the universally rejected "produce-the-note" theory.

"If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440, 129 Cal.Rptr.2d 436 (2003). The California Court of Appeal has explained non-judicial foreclosure under California Civil Code sections 2924-2924l:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994).

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process. Under California Civil Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777. "The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

"Under Civil Code section 2924, no party needs to physically possess the promissory note." *Sicairos v. NDEX West, LLC*, 2009 WL 385855, *3 (S.D. Cal. 2009) (citing Cal. Civ. Code, § 2924(a)(1)). An "allegation that the trustee did not have the original note or had not received it is insufficient to render the foreclosure proceeding invalid." *Neal v. Juarez*, 2007 WL 2140640, *8 (S.D. Cal. 2007).

A claim premised on the "produce-the-note" theory lacks legal merit.  The complaint lacks allegations to support claims under cited statutes, including section 1624, 2924 and 2932.5.

### RICO Violation

The complaint references RICO statutes 18 U.S.C. §§ 1961 and 1962 and alleged "mail fraud." The complaint charges a RICO violation based on foreclosure of the property.  Wachovia faults the complaint's absence of allegations of the enterprise and pattern of racketeering activity to plead necessary elements of a RICO claim.

Subsection (c) of 18 U.S.C. § 1962 ("section 1962") provides:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

A violation of § 1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275 (1985).  A "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."  *Sedima*, 473 U.S. at 496, 105 S.Ct. 3275.

Section 1962(c) requires "that the person named as the defendant cannot also be the entity identified as the enterprise."  *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 995 (8th Cir. 1989).  For a RICO claim, an alleged "enterprise" requires an independent legal entity such as a corporation or an "association in fact" of individuals.  18 U.S.C. § 1961(4).  The United States Supreme Court has explained:

> The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. 18 U.S.C. § 1961(1) (1976 ed., Supp. III). The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages.

*United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524 (1981).

1    Although Wachovia is Ms. Alford's lender and NDEx became the deed of trust trustee, the

2    complaint lacks sufficient allegations of an ongoing organization that functions as a unit.  The complaint

3    fails to allege how Wachovia, NDEx West, LLC or others constitute a RICO enterprise.

4    "Racketeering activity" is any act indictable under several provisions of Title 18 of the United States

5    Code.  *Rothman v. Vetter Park Management*, 912 F.2d 315, 316 (9th Cir. 1990); *see* 18 U.S.C. § 1961.

6    "Racketeering activity" also includes "any act or threat involving murder, kidnapping, gambling, arson,

7    robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed

8    chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State

9    law and punishable by imprisonment for more than one year."  18 U.S.C. § 1961(1)(A).

10   Subsection (5) of 18 U.S.C. § 1961("section 1961") defines "pattern of racketeering activity" to

11   require "at least two acts of racketeering activity, one of which occurred after the effective date of this

12   chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the

13   commission of a prior act of racketeering activity."  Section 1961"does not so much define a pattern of

14   racketeering activity as state a minimum necessary condition for the existence of such a pattern."  *H.J.,*

15   *Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 237, 109 S.Ct. 2893 (1989).  Section 1961(5) "says

16   of the phrase 'pattern of racketeering activity' only that it 'requires at least two acts of racketeering

17   activity, one of which occurred after [October 15, 1970,] and the last of which occurred within ten years

18   (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.' It

19   thus places an outer limit on the concept of a pattern of racketeering activity that is broad indeed."  *H.J.,*

20   *Inc.*, 492 U.S. at 237, 109 S.Ct. 2893.

21   "Section 1961(5) concerns only the minimum *number* of predicates necessary to establish a

22   pattern; and it assumes that there is something to a RICO pattern *beyond* simply the number of predicate

23   acts involved."  *H.J., Inc.*, 492 U.S. at 238, 109 S.Ct. at 2900 (italics in original).  A pattern is not

24   formed by "sporadic activity."  *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. 2900.  The term pattern requires

25   a relationship between predicates and the threat of continuing activity.  *H.J., Inc.*, 492 U.S. at 238, 109

26   S.Ct. 2900.  The factor of continuity plus relationship combines to produce a pattern.  *H.J., Inc.*, 492

27   U.S. at 239, 109 S.Ct. 2900.  "RICO's legislative history reveals Congress' intent that to prove a

28   pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are

1  related, and that they amount to or pose a threat of continued criminal activity." *H.J., Inc.*, 492 U.S. at

2  239, 109 S.Ct. at 2900.

3  Wachovia is correct that the complaint fails to allege "any factual basis for the state or federal

4  crimes that constitute the necessary 'predicate acts' within the definition of 'racketeering activity.'" The

5  complaint lacks sufficient allegations that Wachovia, NDEx or others engaged in an enterprise or two

6  or more criminal acts to support a pattern of racketeering activity under sections 1961(5) and 1962. The

7  complaint fails to allege that Ms. Alford's loan constitutes an unlawful debt, that is, an illegal gambling

8  debt or debt with an interest rate "at least twice the enforceable rate." *Reidy v. Meritor Sav., F.S.B.,* 705

9  F.Supp. 39, 40 (D. D.C. 1989). The complaint fails to identify conduct to constitute or reflect mail

10  fraud.

11  The complaint further fails to satisfy the damages requirement for a RICO claim. The "plain

12  language" of pertinent RICO provisions "leads us to conclude that a plaintiff seeking civil damages for

13  a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or

14  investment of racketeering income." *Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co.,* 981 F.2d

15  429, 437 (9th Cir. 1992), *cert. denied*, 508 U.S. 908, 113 S.Ct. 2336 (1993).

16  The RICO claim is vitiated in the absence of sufficient facts of an enterprise, racketeering

17  activity, pattern of racketeering activity, unlawful debt and recoverable damages. The complaint alleges

18  no injury to Ms. Alford's business or property by a racketeering activity or sufficiently alleged violation

19  identified under RICO. The complaint is devoid of facts to satisfy sections 1961 and 1962. The

20  complaint lacks meaningful support for the civil RICO claim.

21  ## Alternative F.R.Civ.P. 12(e) Relief

22  With dismissal of this action, this Court need not address Wachovia's alternative request for

23  F.R.Civ.P. 12(e) relief.

24  ## Attempt At Amendment And Malice

25  Ms. Alford's claims are insufficiently pled, meritless and barred as a matter of law. Ms. Alford

26  is unable to cure her claims by allegation of other facts and thus is not granted an attempt to amend.

27  Moreover, this Court is concerned that Ms. Alford has brought this action in absence of good

28  faith and that Ms. Alford exploits the court system solely for delay or to vex Wachovia. The test for

maliciousness is a subjective one and requires the court to "determine the . . . good faith of the applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process"). A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court. *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984). An attempt to vex or delay provides further grounds to dismiss this action against Wachovia.

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1.      DISMISSES with prejudice this action; and

2.      DIRECTS the clerk to enter judgment in favor of Wachovia Mortgage, FSB and against plaintiff Cynthia Alford and to close this action.

IT IS SO ORDERED.

**Dated:      January 26, 2010                        /s/ Lawrence J. O'Neill**
                                                              UNITED STATES DISTRICT JUDGE